UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:06CV-308-H

AUDRA HATTER                                                                                    PLAINTIFF

V.

RAYTHEON COMPANY                                                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Audra Hatter, appeals the denial of long-term disability benefits under an Employee Retirement Income Security Act ("ERISA") plan ("the Plan") set up by her former employer, Raytheon Company.  The claims administrator for that plan is Metropolitan Life Insurance Company ("MetLife").  The parties have filed cross-motions for summary judgment.

The issue before the Court is whether or not MetLife's decision to deny long-term disability benefits was arbitrary and capricious.  Because the Plan at issue here gives the fiduciary discretionary authority to determine eligibility for benefits and to construe the terms of the Plans, the arbitrary and capricious standard of review applies.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989); *Dials v. SMC Coal & Terminal Co.*, 891 F. Supp 373, 376 (E.D. Ky. 1995).  Under this standard, courts often sustain – after reasonable evaluation – the administrator's decision to deny long-term benefits.  Liability in this case is to be determined based on the administrative record alone, without consideration of other evidence.  *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

I.

MetLife provides long-term disability benefits for employees of Raytheon Company.

This case is typical is many respects.  The disability policy language is standard.  Under the

terms of the Plan, employees are eligible for short-term and long-term disability benefits for the

first eighteen months of a disability rendering them unable to return to their regular job.  After

eighteen months, however, the employee must show that he or she is unable to perform *any*

occupation for which the claimant is qualified by education, training, or experience.

Plaintiff was employed by Raytheon as a Material Handler, a heavy-duty job that

required a variety of physical labor and physical movements.  Her last day of work at Raytheon

was November 18, 2003.  She injured her foot on the job, eventually resulting in the amputation

of at least one of the toes on her left foot.  During her treatment for that injury, Plaintiff's

physicians also discovered that she has a heart condition identified as dilated cardiomyopathy.

She had surgery to insert a pacemaker device.  Dr. Mio Stikovic, cardiologist, has treated

Plaintiff continually for her heart condition since its diagnosis.  Dr. Stikovac has stated in writing

on a number of occasions that Plaintiff is fully disabled as a result of her heart condition and was

unable to do *any type* of work.  Dr. Stikovac also recommended psychiatric evaluation.  Natalie

Peek, a social worker with Seven Counties Services, diagnosed Plaintiff on May 17, 2005 with

Adjustment Disorder with anxiety and depressed mood, and Post Traumatic Stress Disorder.  On

January 4, 2006, Dr. Stikovac noted Plaintiff's new diagnosis of fibromyalgia, nonischemic

dilated cardiomyopathy, heart disease, anxiety, and depression.

Pursuant to the terms of the Plan, Plaintiff received first short-term disability and then

long-term disability benefits for the first eighteen months of her disability based upon her

2

inability to perform her duties as a Material Handler.  At the end of that eighteen-month period,

MetLife determined that she was ineligible for continuing long-term disability benefits because

she was not disabled from *any job* for which she was qualified by education, training, or

experience.  MetLife informed Plaintiff of this decision by letter dated February 17, 2006.

MetLife based this decision on the reviews conducted by four Independent Physician

Consultants ("IPCs") and other professionals working for MetLife.  No physician from MetLife

examined or spoke to Plaintiff directly, although they could have done so under the terms of the

Plan.  MetLife also obtained an Employability Analysis and Labor Market Analysis from

Kenneth James, a certified rehabilitation counselor.  These persons concluded that Plaintiff could

work in a sedentary job despite her physical and mental disabilities.  Plaintiff appealed this

decision and MetLife denied the appeal in a letter dated May 19, 2006.

II.

The Court concludes, based on a careful review of the administrative record, that

MetLife's decision to deny Plaintiff long-term disability benefits was possible only due to the

absence of fairness and the abuse of discretion, and through the use of an arbitrary evaluation

process.  In reviewing the case, the Court finds some unfortunate parallels between this case and

*Glenn v. MetLife*, 461 F.3d 660 (6th Cir. 2006) where the Sixth Circuit overturned a district

court's grant of summary judgment in favor of MetLife in a similar case.  The Sixth Circuit in

*Glenn* reviewed the plaintiff's case *de novo* and applied the same arbitrary and capricious

standard that this Court must apply here.  *Id.* at 665-66.  The Court finds that the following

examples of conduct, taken together, demonstrate and support the Court's conclusions:

1.   The central problem with Defendant's review of Plaintiff's case is its continual

3

refusal to acknowledge, analyze, or effectively rebut the repeated written opinions by Plaintiff's

treating cardiologist, Dr. Stikovac, that Plaintiff was unable to work.  The record presented to the

Court is replete with documents authored by Dr. Stikovac indicating that he believed Plaintiff to

be fully disabled.  However, Defendant's IPCs and other personnel evaluating Plaintiff rely

extensively (and, it appears, exclusively) on a phone conversation between Dr. Stikovac and Dr.

Michael Rosenberg that took place on January 26, 2006.  During the course of that conversation,

Dr. Stikovac purportedly stated: "I agree, completely, that [Plaintiff] could do any light or

sedentary job."

Defendant's analysis of Dr. Stikovac's conclusions regarding the Plaintiff relies almost

exclusively on this single statement, which is not supported by any document authored or signed

by Dr. Stikovac.  For instance, the initial denial of long-term disability benefits – dated February

16, 2006 – stated that Dr. Rosenberg found Plaintiff to be capable of light or sedentary work and

that "your treating cardiologist concur[red] with this conclusion."  This statement reveals a

serious disconnect from Dr. Stikovac's repeated written conclusions that Plaintiff was totally

disabled, *both before and after the January 26, 2006 teleconference took place*.  In fact neither

the February 17, 2006 or May 19, 2006 letters from Defendant regarding Plaintiff's case for

long-term disability benefits even address the ten or more times Dr. Stikovac stated in writing

that Plaintiff was totally disabled, instead relying on Dr. Stikovac's purported statement during

the January 26 teleconference.  As the Sixth Circuit reasoned in *Glenn*, "[t]hat information is so

inconsistent with other medical evidence and detailed reports supplied by Dr. [Stikovac] over a

period of three years that it can best be described as aberrational."  *Glenn*, 461 F.3d at 669.

Similarly, Defendant's neurology reviewer, Dr. Bruce LeForce, seems to overly rely

upon Dr. Stikovac's alleged oral statement while managing to ignore altogether Dr. Stikovac's written opinions made before and after the alleged oral statement.  Dr. LeForce's report of March 31, 2006 states that Plaintiff "has been cleared for sedentary to light duty work *by her cardiologist*" (emphasis added).  Dr. LeForce never spoke directly to Dr. Stikovac, and thus was essentially relying on the hearsay opinion of Dr. Stikovac.  Neither Dr. LeForce nor the Defendant in its February 17, 2006 and May 19, 2006 communications with Plaintiffs account for the difference between this opinion and, for instance, Dr. Stikovac's March 10, 2006 assessment of Plaintiff's health, where he stated that "[i]t is my professional opinion, based on my knowledge of Ms. Hatter's cardiac and mental health status, she is not able to carry meaningful employment."

In *Glenn*, the Sixth Circuit noted that "the plan administrator need not accord special deference to the opinion of a treating physician.  By the same token, it may not arbitrarily repudiate or refuse to consider the opinions of a treating physician."  *Glenn*, 461 F.3d at 671 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).  By relying exclusively on Dr. Stikovac's single purported oral opinion and ignoring his multiple written opinions, Defendant did just that: refused to consider the overwhelming weight of Dr. Stikovac's opinions about the Plaintiff and instead relied heavily upon an opinion that, if truly tendered, can only be described as aberrational.

2.    The written opinion of Dr. LeForce – Defendant's neurologist reviewer – raises further questions about the reasonableness of the review procedures undertaken by Defendant. Dr. Charles Oates, Plaintiff's treating neurologist, submitted a report dated March 20, 2006 stating that the Plaintiff suffered from "fibromyalgia, lumbar radiculopathy, migraine of classical

5

aura type, insomnia, and generalized fatigue." He stated that these symptoms rendered her "non-functional" three to four times per week, for a whole day each. Dr. Oates opined that these symptoms rendered her "fully disabled."

Dr. LeForce's March 31, 2006 evaluation of Plaintiff disagrees with Dr. Oates' conclusion and states: "No supporting documentation is provided to demonstrative objective abnormalities that would support impairment based on those diagnoses." Repudiating Dr. Oates' opinion without any basis in the record is inappropriate. Dr. LeForce could have said that he lacked the basis to form an opinion on Plaintiff's ability to return to work because of a lack of objective evidence, but instead he concluded that Plaintiff "is capable of full-time work at a sedentary or light duty job." Such a statement cannot provide any basis for disability determination.

3.    Finally, a variety of lesser factors raise questions about the thoroughness and accuracy of the benefits determination. For instance, Dr. LeForce made three attempts to contact Dr. Oates directly to discuss Plaintiff's condition, as he was required to do so. However, all three attempts were made within fifteen minutes of the close of the business day and there is no evidence that a message was left for Dr. Oates at any point. Considering Dr. LeForce disagreed so strongly with Dr. Oates' conclusion and wanted additional evidence regarding Plaintiff's condition, this failure to more vigorously attempt to contact Dr. Oates is questionable. Dr. LeForce may have followed the letter of the Plan, but not the spirit.

Similarly, when faced with a person with documented medical problems, Defendant declined to examine Plaintiff and instead relied upon a "pure paper" review. Such a decision "does not render its denial of benefits arbitrary *per se*." *Glenn*, 461 F.3d at 671. However, such

6

a decision can be "just one more factor to consider in [the Court's] overall assessment of whether [the plan administrator] acted in an arbitrary and capricious fashion." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 295 (6th Cir. 2005).

This Court is not suggesting that a "paper review" is always an inappropriate method of re-evaluating benefits. However, the procedures and analysis shown here fall far short of the type of fairness and objectivity necessary to support a change in benefits determination.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is SUSTAINED and Defendants's denial of benefits is REVERSED.

This is a final order.

cc:     Counsel of Record

7